## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAMSEY COULTER, individually** | : | **CIVIL ACTION** |
| **and on behalf of all similarly situated** | : | |
| **consumers** | : | **NO. 20-1814** |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **EXPERIAN INFORMATION** | : | |
| **SOLUTIONS, INC.** | : | |
| *Defendant* | | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                        FEBRUARY 25, 2021

## MEMORANDUM OPINION

**INTRODUCTION**

Before this Court is Defendant Experian Information Solutions, Inc.'s motion to compel

arbitration filed pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*  [ECF 17].

Plaintiff Ramsey Coulter opposes the motion.  [ECF 25].  The issues raised by the parties are fully

briefed and ripe for disposition.  For the reasons set forth herein, Defendant's motion to compel

arbitration is granted.

**BACKGROUND**

Plaintiff asserts a putative class action claim against Defendant for an alleged violation of

the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a, *et seq*.  Specifically, Plaintiff avers

that Defendant knowingly reported inaccurate "dates of status" on his and other consumers' credit

card accounts and failed to conduct a reasonable investigation of the matter, which negatively

impacted their credit scores.  Defendant moves to compel arbitration of this claim pursuant to an

arbitration provision (the "Arbitration Provision") in the Terms of Use Agreement Plaintiff entered

into when he enrolled in Experian CreditWorks online, the service through which he discovered

the alleged inaccurate dates of status.

The following are the relevant facts in this matter:[1]

On July 17, 2017, Plaintiff enrolled in Experian CreditWorks, Defendant's credit monitoring service, using an online form.   The online enrollment form included a disclosure that indicated: "**[b]y clicking 'Submit Secure Order': I accept and agree to your Terms of Use Agreement . . .**"   (Decl. of David Williams, ECF 17-3 at 3) (emphasis in original).  The Terms of Use Agreement, which was available by clicking a highlighted link on the online form, contains the arbitration provision at issue.  This Arbitration Provision provided, in relevant part:

> PLEASE READ THIS CAREFULLY.   IT AFFECTS YOUR RIGHTS . . .
>
> Arbitration Agreement:
>
> (a) [Experian Consumer Services] and you agree to arbitrate all disputes and claims between us arising out of this Agreement directly related to the Services or Websites to the maximum extent permitted by law, except any disputes or claims which under governing law are not subject to arbitration. This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us directly relating to the provision of any Service and/or your use of any Website subject to arbitration to the fullest extent permitted by law. The agreement to arbitrate includes, but is not limited to: claims arising out of or relating to any aspect of the relationship between us arising out of any Service or Website, whether based in contract, tort, statute (including, without limitation, the Credit Repair Organizations Act) fraud, misrepresentation or any other legal theory; claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising); claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and claims that may arise after the termination of this Agreement.

(Experian Terms of Use Agreement, Ex. 3 to Decl. of David Williams, ECF 17-6 at 7).  The Arbitration Provision included a delegation clause, which provided as follows:

---

[1]	The facts set forth herein are drawn from the complaint and the exhibits attached to the parties' briefs, including the sworn declarations of David Williams and Plaintiff.  For the purposes of this motion, this Court will construe the facts and evidence in the light most favorable to the non-movant—here, Plaintiff.

> (c) . . . All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement including, but not limited to any claim that all or any part of this arbitration provision or Agreement is void or voidable. However if putative class or representative claims are initially brought by either party in a court of law, and a motion to compel arbitration is brought by any party, then the court shall have the power to decide whether this agreement permits class or representative proceedings.

(Experian Terms of Use Agreement at 8).   In addition, the Arbitration Provision contained a clause concerning class action claims:

> (f) YOU AND [Experian Consumer Services] AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

(Experian Terms of Use Agreement at 9) (emphasis in original).

At the time of Plaintiff's enrollment, the Terms of Use Agreement contained an FCRA carve-out, which provided that "any dispute you may have with us arising out of the Fair Credit Reporting Act (FCRA) relating to the information contained in your consumer disclosure or report, including but not limited to claims for alleged inaccuracies, shall not be governed by this agreement to arbitrate." (Experian Terms of Use Agreement at 7).   However, on August 13, 2020, Defendant published an amended Terms of Use Agreement which removed the FCRA carve-out but otherwise contained provisions identical to those stated herein. (*See* Amended Experian Terms of Use Agreement, Ex. 4 to Decl. of David Williams, ECF 17-7).

## LEGAL STANDARD

When addressing a motion to compel arbitration, the Court must first determine the applicable standard of review; *to wit*: either the motion to dismiss standard under Federal Rule of Civil Procedure ("Rule") 12 or the motion for summary judgment standard under Rule 56. *Guidotti v. Legal Helpers Debt Resolution, LLC.*, 716 F.3d 764, 771-72 (3d Cir. 2013).   "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents

relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Id.* at 773-74 (internal citations omitted).   Where arbitrability is not apparent on the face of the complaint, "the issue should be judged under the Rule 56 standard." *Id.*  Here, the issue of arbitrability is not apparent on the face of the complaint and, therefore, Defendant's motion to compel arbitration is properly reviewed under the Rule 56 summary judgment standard.

When applying the Rule 56 standard to a motion to compel arbitration, a court shall grant the motion when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986).  A fact is "material" if its existence or non-existence may affect the outcome of litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   When applying the Rule 56 standard, "the court must draw all reasonable inferences in favor of the nonmoving party."  *Guidotti*, 716 F.3d at 772.

The moving party—here, Defendant—has the burden of establishing "the absence of a genuine issue of material fact" by showing that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322-23.   The non-moving party must then rebut the claim by "citing to particular parts of materials in the record, including, depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A-B).   The non-moving party must show more than "some metaphysical doubt as to the material facts[;]" rather, the non-moving party must "go beyond the pleadings" and

"show that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 476 U.S. 574, 586 (1986); *see also Celotex*, 477 U.S. at 324.

**DISCUSSION**

Defendant moves to compel arbitration based on Plaintiff's assent to the Terms of Use Agreement, which contains the Arbitration Provision. Specifically, Defendant argues that the Terms of Use Agreement contains a delegation clause (the "Delegation Clause") that requires an arbitrator, rather than the court, to decide all questions of arbitrability. Defendant further argues that the Arbitration Provision requires arbitration on an individual basis, and not in the form of a class action. In opposing the motion, Plaintiff argues he is not bound by the current terms of the Terms of Use Agreement but, instead, by the terms of the agreement entered at the time of his enrollment, which exempted FCRA claims from the Arbitration Provision. Plaintiff also argues that Defendant waived its right to arbitrate because it waited nearly eight months after commencement of this litigation to move to compel arbitration. This Court will first address the threshold question of whether the Arbitration Provision's Delegation Clause requires all issues— including Plaintiff's arguments against arbitration—to be addressed by the arbitrator.

The FAA "establishes a strong federal policy in favor of compelling arbitration over litigation." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000). The primary substantive provision of the FAA (§ 2) provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). This provision "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Further, §

2 "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Id.* (internal citations omitted).

Before compelling arbitration, a court must typically determine (1) whether a valid agreement to arbitrate exists, and (2) whether the particular dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). However, when an arbitration provision, by "clear and unmistakable evidence," contains a valid delegation clause, the court's inquiry is limited to the first step: determining whether a valid agreement to arbitrate exists. *Henry Shein, Inc.*, 139 S. Ct. at 530 ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."). This "gateway dispute about whether the parties are bound by a given arbitration clause" is for a court to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

Accordingly, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Shein, Inc.*, 139 S. Ct. at 530. The "arbitrability issue" presumptively includes "allegations of waiver, delay, or a like defense to arbitrability." *Howsam*, 537 U.S. at 84 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983)). Additionally, a delegation clause may delegate the issue of whether a particular dispute falls within the scope of the agreement to the arbitrator. *See Singh v. Uber Technologies, Inc.*, 939 F.3d 210, 228 (3d Cir. 2019) (holding that all questions subject to delegation clause were for arbitrator to decide, including whether parties' dispute fell within scope of arbitration agreement).

If the delegation clause includes the enforceability of the arbitration provision, a court cannot consider the question of enforceability "unless a party challenged the delegation clause and the court concludes that the delegation clause is not enforceable." *Williams v. Medley Opportunity*

6

*Fund II, LP*, 965 F.3d 229, 237 (3d Cir. 2020) (internal citation and quotations omitted).  A party

seeking to avoid arbitration under those circumstances must "challenge the delegation provision

specifically[.]"  *Id.* (quoting *Rent-A-Center West, Inc.*, 561 U.S. at 72); *see also Kocjancic v.*

*Bayview Asset Management, LLC*, 2014 WL 5786900, *4 (E.D. Pa. Nov. 6, 2014) (compelling

arbitration where plaintiff had "not contested the validity of the delegation provision in

particular").

Here, the Arbitration Provision's Delegation Clause provides that "[a]ll issues are for the

arbitrator to decide, including the scope and enforceability of this arbitration provision" and grants

the arbitrator "exclusive authority to resolve any such dispute relating to the scope and

enforceability of this arbitration provision or any other term of this Agreement including, but not

limited to any claim that all or any part of this arbitration provision or Agreement is void or

voidable."  (Experian Terms of Use Agreement at 8).  This provision constitutes a "clear and

unmistakable" delegation clause under *Henry Shein* and delegates the exclusive authority to

resolve "all issues" to the arbitrator, including the "scope and enforceability" of the Arbitration

Provision.  Notably, Plaintiff has not specifically disputed the Delegation Clause.  Therefore,

Plaintiff's arguments as to the scope and enforceability of the Arbitration Provision fall under the

arbitrator's authority.[2]

Because the Delegation Clause is valid and uncontested, this Court's inquiry is limited to

the issue of whether a valid arbitration agreement exists.  To determine whether a valid arbitration

agreement exists, courts look to ordinary state law principles of contract formation.  *Kirleis v.*

---

[2]      Plaintiff argues that his FCRA claim is exempted from the Arbitration Provision that he agreed to in 2017.  Whether Plaintiff's FCRA claim is subject to the Arbitration Provision is a question of the "scope" of the Provision, and thus falls within the arbitrator's authority to decide.  Plaintiff's remaining argument, that Defendant waived its right to arbitrate, is an "arbitrability issue" also subject to the arbitrator's authority under the Delegation Clause.

*Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).  Throughout the inquiry, there is a presumption in favor of arbitrability.  *Trippe*, 401 F.3d at 529.  "Clickwrap" agreements like the one at issue here—where a user's click indicates assent to the terms of use before the user is able to proceed on a website—are evaluated with "traditional principles of contract law and focus on whether the plaintiff[] had reasonable notice of and manifested assent to the clickwrap agreement."  *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007).  *See also HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 334 (W.D. Pa. 2020) ("[C]lickwrap agreements are routinely enforced by the courts.").  Here, reasonable notice was provided when Defendant's website advised Plaintiff that "**[b]y clicking 'Submit Secure Order': [He] accept[s] and agree[s] to [their] Terms of Use Agreement . . .**"  The full Terms of Use Agreement,[3] readily available to Plaintiff by clicking on the highlighted link, contained the Arbitration Provision entitled "DISPUTE RESOLUTION BY BINDING ARBITRATION."  By clicking the "Submit Secure Order" button, Plaintiff manifested his assent to the Terms of Use Agreement.[4]  Indeed, Plaintiff's assent is plain from his own declaration: "I have not seen any amended terms of use *beyond the [Terms of Use Agreement] in which I agreed to in July 2017*."  (Decl. of Ramsey Coulter, ECF 25-1, at 1) (emphasis added).  Because Plaintiff had reasonable notice and manifested his assent, this Court finds the Terms of Use Agreement and the Arbitration Provision therein constitute a valid agreement to arbitrate.

Consistent with the Arbitration Provision's Delegation Clause, this Court may not consider the parties' remaining arguments, including Plaintiff's arguments concerning the terms of the

---

[3]     The Terms of Use Agreement contained an Arbitration Provision at the time of Plaintiff's enrollment.

[4]     As Defendant explained, Plaintiff would not have been able to enroll in Experian CreditWorks, a service he first used in 2017 and has used as late as November 2020, unless he first clicked his assent.  (*See* Decl. of David Williams at 3.)

agreement and whether Defendant waived its right to arbitrate.  *See Williams*, 965 F.3d at 237; *Kocjancic*, 2014 WL 5786900 at *4.  Those issues are to be resolved by the arbitrator.

Finally, Defendant moves for Plaintiff's claims to be arbitrated on an individual basis only. The sole exception to the arbitrator's authority under the Delegation Clause allows a court to decide "whether this agreement permits class or representative proceedings" if "putative class or representative claims are initially brought by either party in a court of law, and a motion to compel arbitration is brought by any party[.]"  (Experian Terms of Use Agreement at 9).  Class action waivers are enforceable under the FAA.  *See AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 333 (2011); *see also Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 232 (3d Cir. 2012) ("[T]he Pennsylvania law prohibiting class action waivers is surely preempted by the FAA").  Defendant's Terms of Use Agreement requires that claims by either party be brought on an individual basis, rather than as a representative of a class.  Plaintiff's assent to the Terms of Use Agreement includes assent to the class action waiver.  As such, this Court finds that Plaintiff has waived his right to bring claims against Defendant as a class representative.  Therefore, Plaintiff must arbitrate his claim on an individual basis.

**CONCLUSION**

This Court finds that a valid agreement to arbitrate exists within the Terms of Use Agreement.  This Court also finds that the class action waiver in the Terms of Use Agreement requires Plaintiff to arbitrate his claim on an individual basis only, and not as a representative of a class.  The parties' remaining disputes are for the arbitrator to decide.  Accordingly, Defendant's motion to compel arbitration is granted. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, U.S.D.C. J.